UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALECIA E. J.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

CASE NO. 3:25-CV-5708-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court concludes that the Administrative Law Judge ("ALJ") erred at Step Two of the sequential evaluation process in his assessment of Plaintiff's fibromyalgia. Moreover, the ALJ also erred in considering certain medical opinion evidence. Had the ALJ properly considered this evidence, Plaintiff's residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded, pursuant to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

sentence four of 42 U.S.C. § 405(g), to the Commissioner of Social Security for further proceedings consistent with this order.

## I.    Procedural History

Plaintiff filed her claims for DIB and SSI on June 5, 2019, alleging disability as of September 30, 2017. AR 1401. Her claim was initially denied on August 27, 2019, AR 252, and upon reconsideration on January 6, 2020. AR 258. A hearing was held before ALJ Allen G. Erickson on October 21, 2021, who issued a decision denying Plaintiff's claims on January 28, 2022. AR 75–89. After the Appeals Council's denial of Plaintiff's request for review of the ALJ's decision, AR 1, Plaintiff appealed the Commissioner's final decision to the United States District Court for the Western District of Washington on April 6, 2023. AR 1312. By order entered March 19, 2024, the ALJ's decision was reversed and remanded. AR 1323.

The matter came on for a new administrative hearing on February 25, 2025, and by decision entered April 14, 2025, the ALJ, once again, concluded that Plaintiff was not disabled.[1] AR 1221–50. From this decision, Plaintiff filed a complaint with this Court on August 13, 2025, seeking judicial review of the ALJ's decision denying SSI and DIB. Dkt. 6.

## II.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). "We review only the reasons

---

[1] When stating "the ALJ's decision" throughout this Order, the Court is referring to the August 13, 2025, decision, not the October 21, 2021, decision.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

**III.    Discussion**

In her Opening Brief, Plaintiff alleges the following issues: (1) the ALJ failed to properly evaluate the medical evidence; (2) the ALJ failed to properly evaluate Plaintiff's testimony; (3) the ALJ failed to properly evaluate lay witness evidence; and (4) the ALJ improperly determined Plaintiff's RFC and erred by basing his Step Five finding on his erroneous RFC assessment. Dkt. 22 at 2. Plaintiff requests remand to the Administration for further proceedings. *Id.* at 19.

A.   *Medical Evidence of Fibromyalgia at Step Two*

First, Plaintiff argues that the ALJ "erred by failing to include in his residual functional capacity assessment all of the limitations related to all of the impairments which he erroneously failed to identify as severe, including [Plaintiff]'s fibromyalgia."[2] *Id.* at 4.

The medical severity of a claimant's impairment is considered at Step Two of the Social Security sequential process. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Administration follows Social Security Ruling ("SSR") 12-2p when determining whether fibromyalgia is a medically determinable impairment. *See* SSR 12-2p, *Titles II and XVI: Evaluation of Fibromyalgia*, 2012 WL 3104869 (July 25, 2012). Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues . . . ." *Id.* at *2.

---

[2] The Court notes that, on remand, the ALJ was instructed by this Court to "reassess [P]laintiff's physical impairments, including her fibromyalgia." AR 1323.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

Fibromyalgia constitutes a medically determinable impairment "when it is established by appropriate medical evidence" and "can be the basis for a finding of disability." *Id.* In determining whether fibromyalgia constitutes a medically determinable impairment, the Commissioner cannot rely on a physician's diagnosis alone; rather, "the evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* SSR 12-2p "designates two separate sets of diagnostic criteria that can establish fibromyalgia as a medically determinable impairment." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (citing SSR 12-2p).

Under the first set of criteria, fibromyalgia may be found a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) at least eleven tender points on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2–3. Under the second set of criteria, fibromyalgia may be found a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) "[r]epeated manifestations" of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

In this case, the ALJ determined Plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. AR 1227. The ALJ also found Plaintiff "has a formal diagnosis of fibromyalgia. However, the medical evidence of record does not satisfy the criteria of SSR 12-2p." AR 1227–28. The ALJ erred.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

As discussed above, SSR 12-2p sets forth two diagnostic criteria that can establish fibromyalgia as a medically determinable impairment at Step Two of the social security process. Under the 2010 regulations, a claimant must show a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome. SSR 12-2p, 2012 WL 3104869, at *3. The regulation then identifies several "signs" of fibromyalgia, for purposes of determining whether fibromyalgia constitutes a medically determinable impairment, including:

> [m]uscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

*Id.* at *3 n.9.

Here, the record shows, contrary to the ALJ's conclusion, evidence in the record supports that Plaintiff *does* satisfy the criteria of SSR 12-2p, because there are "[r]epeated manifestations" of at least six or more fibromyalgia signs, including (1) muscle pain, AR 60, 1559, (2) irritable bowel syndrome, AR 608, 623, 631, 697, 702, 708, 713, 885, 892, (3) headaches, AR 621, 981, 992, 1125, 1202, (4) pain or cramps in abdomen, AR 230, 684, 1571, 1626, 1708, (5) numbness or tingling, AR 230, 634, 684, 1571, (6) depression, AR 202, 206, 469, 494, 607, 1708, (7) constipation, AR 585, 623, 631, and (8) diarrhea, AR 585, 608, 623, 631, 697, 702, 708, 713.

The ALJ failed to properly identify and discuss this evidence when considering whether Plaintiff's fibromyalgia satisfied the criteria of SSR 12-2p at Step Two. Thus, the ALJ erred. Moreover, in light of the ALJ's errors in evaluating certain medical opinion evidence, discussed

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

below, the Court declines to determine whether the ALJ's error is harmless and directs the ALJ, on remand, to reconsider the entire social security sequential process in light of this Court's determination that this evidence shows Plaintiff has satisfied the criteria of SSR 12-2p.

B. *Medical Opinion Evidence*

Next, Plaintiff argues that "the ALJ once again erred harmfully by failing to include in his residual functional capacity assessment all of the limitations related to all of the impairments[,]" Dkt. 22 at 4, and that this Court "should hold that the ALJ's residual functional capacity assessment is legally erroneous and not supported by substantial evidence, as it does not include all of the limitations described by Dr. Edwards, Dr. Wingate, and Dr. Waugh, as well as the limitations described by [Plaintiff] and by the lay witnesses." Dkt. 22 at 18.

When evaluating medical evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[3] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.*

The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). A medical opinion is more "supportable,"

---

[3] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.*

"Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

**Dr. Wingate's Opinions**

Dr. Wingate conducted Psychological/Psychiatric Evaluations of Plaintiff for the Washington State Department of Social and Health Services ("DSHS") in May 2019 and April 2023. AR 680, 1567. While the ALJ discussed Dr. Wingate's 2019 opinion and found it was not persuasive, the ALJ did not discuss the April 2023 opinion. Thus, as an initial matter, the Court observes the ALJ failed to discuss the findings of Dr. Wingate's April 2023 opinion.[4] AR 1236–39. Without such an explanation, the Court cannot determine whether the ALJ considered this opinion in its entirety or simply ignored a portion of the evidence. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from

---

[4]To the extent Dr. Wingate's 2023 opinion is mentioned in the decision denying benefits, it is for the propositions that Plaintiff could "recall 4/4 words after a delay[,]" AR 1231, has "good grooming and logical linear speech[,] AR 1231, and that "[a]nother mental status examination report noted normal thought process and concentration with an ability to digit span 6 forward and 4 backwards, calculate serial 3s, and spell 'phone' backwards." AR 1231. These observations are not an articulation of "how persuasive [the ALJ] f[ound]" the April 2023 medical opinion of Dr. Wingate, as is required under 20 C.F.R. § 404.1520c(b). The ALJ's evaluation of Dr. Wingate's opinions is deficient because he did not adequately explain how he considered Dr. Wingate's opinions as a whole, specifically, by failing to mention the 2023 opinion at all.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

the evidence to [their] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). This error alone necessitates reversal. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Had the ALJ properly considered this evidence, the RFC may have included additional limitations, or the ultimate determination of disability may have changed.[5]

As to Dr. Wingate's 2019 opinion, first, the ALJ concluded that the opinions of Dr. Wingate "are relevant in that they contain assessments that are useful for determining the claimant's functional ability, [however,] [DSHS] administrative conclusions are different" and because "DSHS uses different rules and regulations to establish disability, the same conclusions may not have been reached if applying only our regulations. Given the different regulations and purposes of these evaluations, the undersigned does not find the 'marked' limitations to be persuasive." AR 1238.

"An ALJ may not reject [another governmental agency's determination] based on a general finding that the [other governmental agency's] and SSA disability inquiries differ." *Wilson v. Saul*, No. 2:18-cv-02174, 2020 WL 569524, at *4 (E.D. Cal. Feb. 5, 2020). In fact, "[s]imply observing that differences exist between the rules governing [the alternative disability determination] and SSA does not constitute a persuasive, specific, and valid reason for the

---

[5] The Court notes that there are numerous differences between Dr. Wingate's psychological evaluations of Plaintiff in 2019 and 2023. In 2019, Plaintiff's PTSD was "chronic[,]" but by 2023, it had progressed to "chronic and complex." AR 680, 1567. Similarly, the 2019 opinion observed Plaintiff as having "[b]orderline personality disorder traits" which had manifested into "Borderline Personality Disorder" by the time of the 2023 opinion. *Id.* Dr. Wingate also noted regression in Plaintiff's ability to "[l]earn new tasks[,]" to "[p]erform routine tasks without special supervision" and Plaintiff's ability to "[c]ommunicate and perform effectively in a work setting." AR 679–80, 1566–67. As to Plaintiff's prognosis, in 2019, Dr. Wingate determined that she "will be impaired with available treatment" for twelve to eighteen months. By 2023, Dr. Wingate determined "24+" months would be necessary, AR 680, 1567, because Plaintiff "needs intensive therapy to address PTSD and BPD. Prognosis for improvement to the point that she can work is guarded to poor." AR 1567.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

Commissioner to disregard the [alternative disability determination]." *Id.* An ALJ "can only meet the standard of rejecting the [alternative disability determination] by articulating persuasive, specific and valid reasons that are supported by the record as a whole and based on evidence not available in the [alternative governmental agency's] disability determination." *Id.* As will be discussed in the analysis to follow, the ALJ did not satisfy this burden in the present case, and these "different rules and regulations" between DSHS and the SSA are not, standing alone, a valid reason for discounting Dr. Wingate's 2019 medical opinion. *Id.*

Next, the ALJ found that "Dr. Wingate did not provide a detailed explanation for their opinion and appears to have relied heavily on the claimant's symptom report." AR 1238. In support, the ALJ referenced Dr. Wingate's 2019 exam notes, which show "some abnormal insight/judgment, but otherwise normal signs like logical and linear speech, talkative and pleasant attitude and behavior, euthymic mood with a few incidents of crying, full and congruent affect, and thought process and content, orientation, perception, memory, fund of knowledge, concentration, and abstract thought within normal limits." *Id.*

It is well-established, however, that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id.* For these reasons, "the report of a psychiatrist should not be rejected simply because of the relative imprecision of psychiatric methodology." *Id.* (brackets and ellipses omitted). In fact, a medical opinion's "partial reliance on [the claimant]'s self-reported symptoms is thus not a reason to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

reject [the physician's] opinion." *Id.* For these reasons, the Court concludes that the ALJ erred in discounting Dr. Wingate's 2019 opinion based on its use of claimant's symptom report.

Finally, the ALJ asserted that "[m]arked limitations in a few categories do not necessarily equate to overall marked limitation in broad SSA categories," and "to the extent that they suggest functional abilities more restricted than found in this decision, the opinion is not consistent with the longitudinal record . . . which shows routine and conservative treatment recommendations with medication and counseling, and even with a lack of treatment adherence and at times varied mood and affect, generally normal presentation and performance on examination." AR 1239.

Social Security regulations "require the ALJ to consider an opinion's consistency 'with the record as a whole' in weighing the opinion." *Robert H. v. Berryhill*, 3:17-cv-05691, 2018 WL 5292368, at *4 (W.D. Wash. Oct. 25, 2018) (citing 20 C.F.R. § 404.1527(c)(4)). As noted above, the ALJ entirely failed to consider Dr. Wingate's 2023 psychiatric evaluation in his decision. AR 1239–39. As the record shows the 2023 evaluation was consistent with the Dr. Wingate's 2019 evaluation and the longitudinal medical record of Plaintiff's mental illness, the ALJ should have considered it when weighing Dr. Wingate's opinion. AR 146, 151, 230, 430, 433, 1256–57, 1446, 1508, 1515–16, 1564–67.

It is also reversible error for an ALJ to have "cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Here, the ALJ appears to have "'cherry picked' several normal mental-status findings from amid a record that as a whole contains far more evidence" of mental impairments. *Robert H.*, 2018 WL 5292368, at *5. Thus, the ALJ failed to properly consider the medical opinion testimony of Dr. Wingate, and consequently, the ALJ erred.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination of whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118–19 (citations omitted).

Here, the ALJ's error is not harmless because, had the ALJ properly considered the medical opinion evidence of Dr. Wingate, the RFC or the ALJ's ultimate determination of disability may have changed. For example, the ALJ may have found that Dr. Wingate's medical opinions suggested limitations beyond those found in the RFC were warranted, or that Plaintiff's mental limitations rendered her disabled entirely.

**Dr. Edwards**

The ALJ also found the medical opinion of Dr. Edwards was "somewhat persuasive[,]" finding first that Dr. Edwards' usage of "terms like 'moderately,' 'significantly,' and 'markedly' are vague" and "[e]ven to the extent that they suggest functional abilities more restricted than found in this decision, the significant and marked limits are not well supported by the doctor's own exam, which considers the claimant's self-reports of symptoms . . . ." AR 1238. Second, the ALJ discounted the opinion because Dr. Edwards' exam "otherwise documents [Plaintiff's] generally normal presentation and performance on mental status testing with well-groomed appearance, no evidence of psychomotor agitation or retardation, cooperative behavior, generally pleasant affect, no suicidal ideation, normal speech, and intact memory and concentration." *Id.*

First, the Court observes the use of vague terms like moderately, significantly, and markedly, coupled with reliance upon a claimant's self-report is not *per se* a reason for discounting a medical expert's opinion. "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields[,]" and "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck*, 869 F.3d at 1049. Therefore, the ALJ erred by discounting Dr. Edwards' opinion simply "because of the relative imprecision of the psychiatric methodology." *Id.* (brackets, ellipses, and citation omitted).

Second, as the ALJ did with regard to Dr. Wingate's opinion, the ALJ's finding that Plaintiff has "generally normal presentation and performance on mental status testing with well-groomed appearance, no evidence of psychomotor agitation or retardation, cooperative behavior, generally pleasant affect, no suicidal ideation, normal speech, and intact memory and concentration" is not supported by substantial evidence in the record. AR 1238. Here too, the ALJ appears to have "improperly cherry-picked some of [Dr. Edwards'] characterizations of [Plaintiff]'s rapport and demeanor instead of considering these factors in the context of [Dr. Edwards'] diagnoses and observations of impairment." *Ghanim*, 763 F.3d at 1164.

The ALJ's error is also not harmless because, had the ALJ properly considered this medical opinion evidence, the RFC or the ALJ's ultimate determination of disability may have changed. In light of the ALJ's failure to consider significant, probative evidence, Dr. Wingate's 2023 opinion, and the ALJ's failure to properly consider Dr. Wingate's 2019 medical opinion and Dr. Edwards' 2017 medical opinion, the Court finds that this matter must be remanded to the Administration. On remand, the Commissioner should give Plaintiff an opportunity to supplement the record. Therefore, as new evidence may be submitted, the Court declines to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

consider the remaining errors raised by Plaintiff and directs the Commissioner to re-evaluate all steps of the sequential evaluation process on remand.

**IV.    Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

Dated this 5th day of March, 2026.

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 13